David A. Gabianelli (State Bar No. 158170)
Andrew L. Chang (State Bar No. 222309)
SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA  94111-3492
Telephone:   +1.415.954.0200
Facsimile:   +1.415.393.9887
Email:         dgabianelli@ssd.com
Email:         achang@ssd.com

Attorneys for Defendant
CENTIMARK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| PATRICK HANSEN,<br><br>        Plaintiff,<br><br>vs.<br><br>CENTIMARK CORPORATION,<br><br>        Defendant. | Case No.  C-08-2611-EDL<br><br>**DEFENDANT CENTIMARK CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY OR TRANSFER**<br><br>Date:     July 15, 2008<br>Time:    9:00 a.m. |

### NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on July 15, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom E of the above-entitled Court, located at 450 Golden Gate Ave., 15th Floor, San Francisco, California, Defendant CentiMark Corporation ("CentiMark") will and hereby does move the Court for an Order granting the relief sought by this Motion.

Defendant CentiMark Corporation ("CentiMark"), by and through its undersigned counsel, and in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, submits the within Motion, seeking to dismiss, without prejudice, the claims of Plaintiff Patrick Hansen ("Hansen") as a preemptive suit in favor of the broader, coercive suit filed by CentiMark and pending in the United States District Court, Western District of

Pennsylvania, styled as *CentiMark Corporation v. Tecta America Corp., Vincent J. Vitek, and Patrick J. Hansen*, Civil Action No. 08–0593 (the "Pennsylvania Action"). In the alternative, CentiMark respectfully requests that the Court transfer this action to the United States District Court for the Western District of Pennsylvania for consolidation with the Pennsylvania Action or stay all activities in this case pending the resolution of the Pennsylvania Action.

WHEREFORE, Defendant CentiMark Corporation respectfully requests that this Court dismiss the Complaint in this action without prejudice or, in the alternative, either transfer the action to the United States District Court for the Western District of Pennsylvania for consolidation with the Pennsylvania Action or stay all activities in this case pending the resolution of the Pennsylvania Action.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  **INTRODUCTION**

Plaintiff Hansen commenced this declaratory judgment for the sole and improper purpose of forum shopping. Hansen was formerly a National Accounts Manager with CentiMark, one of North America's largest commercial roofing contractors headquartered outside of Pittsburgh, Pennsylvania. When Hansen and another National Accounts Manager, Vincent J. Vitek ("Vitek"), simultaneously resigned from CentiMark on April 21, 2008 and disclosed that they would be joining Tecta America Corp. ("Tecta"), a primary competitor, CentiMark advised that it intended to sue them for, among other misconduct, breaching the restrictive covenants in their employment contracts.

Hansen, thereafter, promptly beat CentiMark to the courthouse by filing this action on April 23rd, just two days after resigning. Despite the fact that his employment agreement expressly states that it is governed by Pennsylvania law, Hansen seeks a declaration that the contract's restrictive covenants are unenforceable under *California* law. Hansen also purports to seek a preliminary injunction to prevent CentiMark from attempting to enforce the restrictive covenants to which he voluntarily agreed. Nearly six weeks have passed since Hansen filed his complaint, however, and he has not filed a motion seeking a preliminary injunction nor conducted any discovery. Nothing has happened in this action other than the filing of the complaint and the

filing of this motion.

On April 30th, just seven (7) business days after Hansen resigned, CentiMark sued Hansen, Vitek, and Tecta in Pennsylvania. CentiMark alleges not only that Hansen and Vitek have breached their employment agreements, but also asserts tort claims against them and Tecta for misappropriation of trade secrets, unfair competition, tortious interference, and civil conspiracy. Unlike Hansen, CentiMark promptly sought a temporary restraining order, expedited discovery, and a preliminary injunction hearing in the Pennsylvania action. The parties voluntarily have entered into a consent order which governs the conduct of Hansen, Vitek, and Tecta while the parties conduct discovery and prepare for an injunction hearing.

Many courts, including this Court, have dismissed "anticipatory" declaratory judgment actions filed by prospective defendants in an attempt to gain a tactical advantage in litigation, such as selecting a forum that is convenient and/or more likely to apply favorable law. This action is the epitome of an improper anticipatory action. After CentiMark expressed its intent to file suit in connection with Hansen's resignation, Hansen immediately filed suit, not to advance a legitimate purpose of the Declaratory Judgment Act, but instead to "beat CentiMark to the courthouse" and select a convenient forum. Hansen apparently believes that a California court is also more likely to disregard the agreed–upon choice of law provision and apply California law, which Hansen believes to be more favorable than Pennsylvania law in his attempt to avoid his post–employment obligations. Such brazen forum shopping cannot be countenanced. This Court should dismiss this action without prejudice so that all of CentiMark's claims — against not only Hansen, but also Vitek and Tecta — proceed in a single, comprehensive action.

## II. FACTUAL BACKGROUND

### A. CentiMark's Business and National Accounts Group

Founded in Pittsburgh in 1968, CentiMark has grown to become one of North America's largest roofing contractors. CentiMark markets, sells, installs, and services roofs and roofing systems to commercial, institutional, and industrial customers. CentiMark operates out of approximately 50 North American offices.

Nearly twenty (20) years ago, CentiMark created a national sales force — known as its

National Accounts Group — to complement its local sales force. This initiative was unique in an industry historically dominated by local and "piecemeal" relationships. Members of the National Accounts Group manage the relationships with CentiMark's largest and most lucrative customers, some of which own hundreds or even thousands of commercial facilities throughout North America. These "national account" customers are the most likely to require large roofing installation, repair, and service projects in the future in a multitude of locations.

For these reasons, CentiMark's "national" account managers are critically important to CentiMark's continued business development and retention of existing clients. CentiMark places a great deal of trust in its national account managers by entrusting them with the company's most vital assets: CentiMark's selling strategies, marketing and pricing methodologies, and processes for cultivating relationships with the largest existing and prospective long–term customers, and management responsibility over those relationships. This confidential information creates a unique platform for CentiMark to obtain and maintain valuable business relationships.

### B.    Hansen's Employment with CentiMark

CentiMark hired Hansen in January of 2003 as a National Accounts Manager. Hansen was highly educated, having received a Masters Degree in Business Administration, but had no prior experience in the roofing industry.

Hansen signed an Employment and Noncompetition Agreement with CentiMark at the inception of his employment. *See* Employment and Noncompetition Agreement (the "Agreement"), a copy of which is attached to the Complaint for Declaratory and Injunctive Relief ("Complaint"), as Exhibit A. In the Agreement's non–compete provision, Hansen agreed not to sell the same or similar products/services on behalf of a competitor of CentiMark for a period of one (1) year following the termination of his employment with CentiMark. *See id.* at Article 3.2. Hansen also agreed to be bound by certain non–solicitation and non–disclosure obligations after his employment with CentiMark terminated. *Id.* at Articles 2.4 and 3.2. The Agreement expressly states that it is governed by the laws of Pennsylvania. *Id.* at Article 4.3

Hansen developed new customer relationships and continued to build on existing customer relationships during the nearly five (5) years that he served as a National Accounts

Manager. The customers with whom Hansen developed relationships were large, important, and repeat customers of CentiMark, most of which required recurring services throughout North America and, in the aggregate, represent millions of dollars of annual revenue.

Hansen was also a member of CentiMark's National Account Group's Steering Committee. As one of approximately seven (7) or eight (8) members of this committee, Hansen participated in the development and implementation of CentiMark's highest level initiatives, strategies, counterstrategies, pricing, bidding, and material strategic planning relative to its national account programs.

### C. CentiMark's Negotiations with Tecta

Tecta is a large competitor of CentiMark's in the roofing industry. In early 2007, CentiMark and Tecta commenced highly private and confidential negotiations involving a potential merger, combination, or transaction involving their businesses. The benefit and value of CentiMark's unique National Accounts Group was one of the topics discussed with Tecta. Before disclosing their confidential, nonpublic business information to one another, CentiMark and Tecta executed a confidentiality agreement. Tecta expressly agreed that, for a twelve (12) month period, it would not solicit for hire or hire any senior management employee of CentiMark.

CentiMark eventually determined that it was not interested in pursuing negotiations with Tecta, despite Tecta's continued interest. Accordingly, the negotiations between CentiMark and Tecta ceased in approximately Spring of 2007, and the parties did not thereafter pursue any type of combination or transaction

### D. Hansen Resigns and Joins Tecta

In the first quarter of 2008, CentiMark learned that Tecta was actively seeking to secure salespeople in order to establish a national sales force. Job placement companies retained by Tecta even contacted a number of CentiMark's National Account Managers, including Hansen and Vitek, a National Accounts Manager who resides in Illinois. Hansen and Vitek both acknowledged to CentiMark that they had been contacted, but both indicated to CentiMark that they had no current interest in pursuing employment opportunities with Tecta.

On April 21, 2008, Hansen and Vitek simultaneously resigned from CentiMark and joined

Tecta. They informed CentiMark that Tecta was aware of the restrictive covenants contained in their employment agreements, but proceeded to solicit and hire them despite those restrictions.[1] CentiMark subsequently obtained information which suggests that Tecta began negotiating with Vitek and Hansen in January and/or February of 2008, within the one–year time period during which Tecta had agreed not to solicit any senior management employees of CentiMark.

### E. Hansen Commences This Action Two Days After Resigning

On April 22, 2008, the day after Hansen and Vitek resigned, the President and Chief Executive Officer of Tecta telephoned CentiMark to discuss their employment with Tecta. CentiMark, thereafter, specifically addressed with Tecta the possibility of filing of a lawsuit against Hansen, Vitek, and Tecta, to enjoin their misconduct.

The following day — on April 23, 2008 — Hansen beat CentiMark to the courthouse by filing his cursory, 22–paragraph Complaint in this action. Despite the fact that the Agreement expressly states that it is governed by Pennsylvania law, Hansen seeks a declaration that the contract's restrictive covenants are unenforceable under *California* law. Hansen also purports to seek injunctive relief to prevent CentiMark from attempting to enforce the restrictive covenants to which he voluntarily agreed. Nearly six (6) weeks have passed since Hansen filed his Complaint, however, and he has not filed a motion seeking a preliminary injunction nor conducted any discovery.

### F. CentiMark Sues Hansen, Vitek, and Tecta in Pennsylvania

The week after Hansen resigned, on April 30, 2008, CentiMark filed a Verified Complaint in the United States District Court for the Western District of Pennsylvania styled as *CentiMark Corporation v. Tecta America Corp., Vincent J. Vitek, and Patrick J. Hansen*, Civil Action No. 08–0593. CentiMark alleges that Hansen has breached, and will continue to breach, the non–competition and non–disclosure provisions of his employment agreement. CentiMark also asserts tort claims against Hansen for misappropriation of trade secrets, tortious interference with contract and prospective business relations, unfair competition, breach of fiduciary duties, civil

---

[1] Like Hansen, Vitek signed an employment agreement with CentiMark containing non–competition, non–solicitation, and non–disclosure provisions.

conspiracy, and unjust enrichment.

CentiMark alleges that Vitek also breached the restrictive covenants contained in his employment agreement with CentiMark, committed similar tortious conduct, and unlawfully conspired with Hansen and Tecta. Finally, CentiMark alleges that Tecta breached its agreement with CentiMark by soliciting Hansen and Vitek, induced Hansen and Vitek to breach their fiduciary duties, misappropriated CentiMark's trade secrets, tortiously interfered with CentiMark's contracts and prospective business relations, unfairly competed with CentiMark, and engaged in a civil conspiracy with Hansen and Vitek.

On May 2, 2008, just days after filing its Verified Complaint in the Pennsylvania Action, CentiMark filed the following voluminous motions:

- Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction;
- Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction;
- Motion for Hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction;
- Plaintiff's Motion for Order of Court Directing Preservation of Documents, Software and Things; and
- Plaintiff's Motion for Expedited Discovery.

CentiMark attached, as Exhibits A through L to its Motion for Expedited Discovery, copies of the interrogatories, requests for production of documents, requests for admission, and deposition notices that it desires to serve on an expedited basis.

After service was effectuated upon all three of the defendants, the Pennsylvania Action proceeded. The case was assigned to a Magistrate Judge, who conducted a telephonic status conference on May 16, 2008. Hansen, Vitek, and Tecta are each represented by the law firm of Quarles & Brady LLP in the Pennsylvania Action. This law firm also represents Tecta in other matters, and filed the Complaint on behalf of Hansen in this action.

The parties in the Pennsylvania Action, including Hansen, promptly negotiated the terms of an order requiring them to preserve documents in conjunction with the Pennsylvania Action,

which the Court entered on May 20, 2008. The Court also scheduled a hearing on CentiMark's Motion for Temporary Restraining Order for the afternoon of May 27, 2008. All parties in the Pennsylvania Action subsequently negotiated a mutually–agreeable interim Consent Order to govern their conduct until the Court rules on CentiMark's motion for a preliminary injunction. The Court entered the Consent Order on May 23, 2008.

## III. ARGUMENT

Hansen asserts that he seeks a declaratory judgment under California Code of Civil Procedure § 1060 that the restrictive covenants in the Agreement are unenforceable. Complaint, ¶ 1. CentiMark removed the action to this Court on May 23, 2008. Accordingly, the propriety of exercising jurisdiction over this action is governed by the Declaratory Judgment Act codified at 28 U.S.C. § 2201. *Schmitt v. JD Edwards World Solutions Co.*, No. C01–1009–VRW, 2001 WL 590039, at *1 (N.D. Cal. May 18, 2001)("Although this case was originally brought in state court, 'the question whether to exercise federal jurisdiction to resolve the controversy became a procedural question of federal law' when the case was removed.")(citing *Golden Eagle Ins. Co. v. Travellers Companies*, 103 F.3d 750, 753 (9th Cir. 1996)).

### A. District Courts Only Exercise Jurisdiction if Doing So Will Achieve the Purposes of the Declaratory Judgment Act

The Declaratory Judgment Act authorizes district courts to resolve declaratory judgment actions. 28 U.S.C. § 2201 (2008). However, district courts are not ***required*** to exercise their jurisdiction if doing so will not achieve the limited purposes of the Declaratory Judgment Act. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc.* 16 Fed. Appx. 433, 437 (6th Cir. 2001)("A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing."); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983)("the Declaratory Judgment Act 'gives the court a choice, not a command.'")(internal citation omitted). Those limited purposes are to clarify and resolve controversies in which (1) imminent but unnecessary damages can be avoided or (2) one party could sue to obtain damages or injunctive relief, but has not promptly done so. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

For example, in *Koch Engineering Company, Inc. v. Monsanto Company*, 621 F. Supp. 1204 (E.D. Mo. 1985), the court dismissed the plaintiff's declaratory judgment action because it did not satisfy either of the Declaratory Judgment Act's purposes. The court explained:

> In deciding whether to allow [plaintiff] to proceed with this lawsuit, the court must look to the purpose of the Declaratory Judgment Act. The Act was intended to provide a remedy which would "minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to bring an action after the damage has accrued." 10A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 2751 at 569 (1983).

*Id.* at 1206–07. Because the breach of contract had allegedly already occurred, and the defendant filed its own lawsuit to recover the resulting damages just two weeks after plaintiff commenced its declaratory judgment action, the court held that "allowing this suit to proceed under these circumstances will not promote any of the purposes of the Declaratory Judgment Act." *Id.* at 1207.

### B. District Courts Dismiss Improper Declaratory Judgment Actions Intended to Forum Shop and/or Invoke Favorable Law

Prospective defendants who suspect that they will be sued occasionally misuse the Declaratory Judgment Act in an attempt to require the prospective plaintiff to pursue its action in a forum of the prospective defendants' choosing. One district court explained the impropriety associated with such forum shopping as follows:

> The device of the declaratory judgment can thus, when cleverly employed, be an effective aid to forum shopping by a party who anticipates that a suit is about to be filed against it. Proper forum selection should not be confused with improper forum shopping. A plaintiff seeking redress for a cognizable injury is entitled, to the extent able to chose among several forums, to select the one that it finds most attractive. Forum shopping, on the other hand, occurs when a party, perceiving that it may find itself forced into a disadvantageous forum, seeks to manipulate the procedural devices to secure and advantage which, were those devices not available, it could not employ to defeat its opponent's choice of forum.
>
> One of those devices, as the foregoing cases make clear, is the declaratory judgment. But the limited opportunity afforded by the Declaratory Judgment Act, 28 U.S.C. § 2201 to seek a declaration of rights where an opponent may be disinclined to do so, or where the underlying controversy has not fully matured, should not be

> employed for other purposes, such as to tolerate, much less reward forum shopping. Indeed, some courts have noted that a first–filed declaratory judgment action may be deemed moot once the substantive action on the underlying merits has been filed. As the Seventh Circuit has noted … where the substantive plaintiff has filed its suit and raised all the issues originally sought to be adjudicated by the first–filer's declaratory judgment action, the initial "declaratory judgment serves no useful purpose."

*International Union v. Dana Corp.*, No. 3:99CV7603, 1999 WL 33237054, at *4 (N.D. Ohio Dec. 6, 1999)(internal citations omitted).

In *Schmitt*, a case directly on point, this Court dismissed a preemptive action brought by an employee seeking a declaration that the restrictive covenants in his employment contract with a former employer were unenforceable. *Schmitt*, 2001 WL 590039, at **2–3. When the employee joined a competitor in violation of those restrictive covenants, his former employer disclosed its intention to sue him in a Colorado court. *Id.* at *1. The employee immediately filed a declaratory judgment action in state court in California the very next day. *Id.* After the case was removed, this Court granted the former employer's motion to dismiss, stating:

> If a court is faced with two suits, a first filed declaratory relief action and a subsequent coercive suit filed in a different court, and the court determines that the declaratory suit is a preemptive suit meant to deprive the natural plaintiff of the forum of his choice, the court should dismiss or stay the declaratory suit. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *Moore's* [James W. Moore, *Moore's Federal Practice*] at § 57.42[3]. This prevents forum shopping by a declaratory plaintiff who files suit in anticipation of being sued by a natural plaintiff.

*Id.* at *2; *see also Charles Schwab & Co., Inc. v. Duffy*, No. C98–03612, 1998 WL 879659, at *1 (N.D. Cal. Dec. 8, 1998)(dismissing anticipatory declaratory judgment action to avoid rewarding "a race to the courthouse that appears to have been 'won' by Schwab.").

Similarly, in *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corporation*, 511 F.3d 535 (6th Cir. 2007), the Sixth Circuit approved of the dismissal of an anticipatory action seeking a declaration that franchisees had not violated their non–compete covenants with the franchisor. *Id.* at 551–52. The franchisees filed a declaratory judgment action in their chosen forum shortly after the franchisor threatened them with a breach of contract action. *Id.* at 539–40. The trial court dismissed that action so that the dispute would be resolved exclusively in the

franchisor's subsequently–filed action. *Id*. The Sixth Circuit noted that the dismissal was appropriate:

> "Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that the first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit. . . ."
>
> The Ohio action filed by [the franchisees] was the very kind of anticipatory suit which should not have been given deference under the first–to–file rule. As the Ohio district judge recognized when it dismissed the action, the forum selection clause in the franchise agreement clearly mandated that the parties' dispute be resolved in a Michigan, rather than an Ohio, forum. [The franchisees] were attempting to forum shop as well as preempt resolution of the parties' dispute in the proper forum.

*Id.* at 552 (internal quotations omitted).

Courts have recognized that anticipatory plaintiffs file declaratory judgment actions not only to select a more convenient forum, but also where they believe that the first–filed court may be more likely to apply what they perceive to be favorable law. For example, in *BASF Corporation v. Symington*, 50 F.3d 555 (8th Cir. 1995), the Eighth Circuit reversed the entry of a declaration that the defendant's imminent personal injury action against the plaintiff would be time–barred by the statute of limitations. *Id.* at 556. The court held that the anticipatory action was intended to take advantage of a more favorable statute of limitations, therefore constituted a "misuse" of the declaratory judgment act, and should have been dismissed. *Id.* at 559 ("Here, we are convinced that BASF's declaratory action in North Dakota is chiefly calculated to take advantage of favorable statute of limitations."). In *Mission Insurance*, the Fifth Court similarly rejected a declaratory–plaintiff's attempt to select a forum that might apply more favorable insurance coverage law. *Mission Insurance*, 706 F.2d at 602 n.3 ("There are indications that forum shopping was an element in this case. Mission states that the burden of proof in regard to the loss may differ in California and Texas, an important fact in this case since even proving that the thefts occurred may require resort to complicated accounting analyses.").

Finally, courts have emphasized that an anticipatory declaratory judgment action which encompasses only a single issue — and will not resolve the entire dispute between the parties —

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, California 94111-3492

should be dismissed to avoid duplicative litigation. In dismissing the former employee's action in *Schmitt*, this Court noted that the employer's second–filed action was not limited to the breach of the non–compete agreement, but also included two claims involving the disclosure of trade secrets, rendering the subsequent suit a more appropriate forum. *Schmitt*, 2001 WL 590039, at *3.

Similarly, the court in *Koch* explained:

> As an initial matter, it is important to note that the two actions are not identical. Koch's action in this Court seeks a declaration of the parties' rights under contract. Monsanto's action, filed in the Southern District of Texas, seeks damages for breach of contract, breach of warranty, negligence and a violation of the Texas Deceptive Trade Practices Act. . . . This Court must also consider which of the two actions will best serve the needs of the parties by providing a comprehensive solution to the entire controversy. . . [I]t is quite obvious to this Court even at this early stage in the proceedings that Monsanto's suit in the Southern District of Texas will fully resolve the controversy between the parties. By dismissing Koch's petition for declaratory judgment, this Court avoids both the uncertainty of a possible premature injunction and/or the burden and expense on the courts and the parties associated with duplicate lawsuits.

*Koch*, 621 F. Supp. at 107–08.

### C. Hansen's Anticipatory Declaratory Judgment Action, Filed in an Attempt to Obtain a Convenient Forum and Potentially Favorable Law, Should Be Dismissed

This action is clearly an anticipatory declaratory judgment action intended to preempt CentiMark's imminent filing of the Pennsylvania Action. When Hansen resigned on April 21, 2008, he realized that CentiMark intended to enforce the restrictive covenants contained in the Agreement. On April 22nd, CentiMark expressly advised Tecta that it was considering filing a lawsuit with respect to Tecta's hiring of Hansen and Vitek. The following day, on April 23rd, Hansen commenced this action seeking a declaration that the restrictive covenants are not enforceable. The fact that Hansen did not move for a preliminary injunction to prevent the enforcement of those covenants — and instead commenced his employment with Tecta without seeking the preliminary injunctive relief mentioned in the Complaint — further proves that Hansen filed this action not to obtain emergency equitable relief, but instead to select an advantageous forum in which to resolve CentiMark's claims.

It is therefore not surprising that adjudicating this action will not satisfy either of the purposes of the Declaratory Judgment Act. Hansen did not file this action to avoid the accrual of imminent monetary damages. To the contrary, Hansen contends that there are no "cognizable damages" at issue in this action because the Agreement is purportedly "void and unenforceable." Complaint, ¶ 17. Nor can Hansen plausibly allege that he filed the action because CentiMark threatened him with, but had not promptly pursued, litigation. CentiMark advised on April 22, 2008 that it might pursue litigation, and Hansen filed this action the very next day. CentiMark promptly filed the Pennsylvania Action on April 30th, just seven (7) business days after Hansen resigned. Unlike Hansen, CentiMark immediately sought a temporary restraining order, expedited discovery, and a preliminary injunction.

It also appears that Hansen's forum shopping involves a misguided attempt to invoke California law. The parties expressly agreed that the Agreement would be governed by Pennsylvania law. *See* Agreement, Article 4.3. Hansen asserts in the Complaint, however, that the Agreement's restrictive covenants are "void and unenforceable" under California law. Hansen ostensibly believes that a California court would be more likely than a non–California court to disregard the agreed–upon choice of law, apply California law, and determine that the restrictive covenants are unenforceable under California law.[2] Prohibiting such blatant forum shopping is the very reason that many courts, including this Court, dismiss anticipatory declaratory judgment actions aimed at obtaining such a tactical advantage.

Finally, and like *Schmitt* and *Koch*, dismissing this anticipatory action will preserve judicial economy. CentiMark's claims against Hansen in the Pennsylvania Action are not limited to single issue that he has raised in this action — the enforceability of the restrictive covenants in the Agreement — but also include tort claims for misappropriation of trade secrets, unfair competition, tortious interference, breach of fiduciary duties, and civil conspiracy. Hansen's coconspirators, Tecta and Vitek, are also parties to the Pennsylvania Action. The Pennsylvania

---

[2] CentiMark believes that the restrictive covenants are enforceable not only under the governing Pennsylvania law, but also under California law. It appears that Hansen believes that the covenants are more likely to be deemed unenforceable under California law, however, and that a California court is more likely apply the law that he would now prefer to apply.

1  Action can afford all interest parties complete and comprehensive relief, and is progressing

2  rapidly. By dismissing this action, the Court will avoid the burden and expense on the courts and

3  the parties associated with duplicate lawsuits by dismissing this action.

**IV. CONCLUSION**

For the foregoing reasons, this Court should dismiss the Complaint in this action without prejudice. In the alternative, the Court should transfer the action to the United States District Court for the Western District of Pennsylvania (for ultimate consolidation with the Pennsylvania Action) or stay all activities in this case pending the resolution of the Pennsylvania Action.

DATED:   June 2, 2008                            Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By:   /s/ David A. Gabianelli
            David A. Gabianelli

Attorneys for Defendant
CENTIMARK CORPORATION

OF COUNSEL:
Peter S. Russ
Gregory J. Krock
Buchanan Ingersoll & Rooney
One Oxford Centre
301 Grant St., 20th Floor
Pittsburgh, PA 15219-1410
Telephone:   +1.412.562.8800
Facsimile:    +1.412.562.1041