Otto W. Immel
QUARLES & BRADY LLP
1395 Panther Lane, Suite 300
Naples, FL  34109
Phone: (239) 659-5041
Fax: (239) 213-5449
oimmel@quarles.com
*Admitted Pro Hac Vice*

Steven B. Sacks, Calif. State Bar No. 98875
Sheppard, Mullin, Richter & Hampton LLP
Four Embaccadero Center
17th Floor
San Francisco, CA 94111
Phone: 415-434-9100
CA State Bar No. 98875

*Attorneys for Plaintiff Patrick Hansen*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HANSEN,<br><br>                    Plaintiff,<br><br>v.<br><br>CENTIMARK CORPORATION,<br><br>                    Defendant. | Case No.  C-08-2611-SI<br><br>**PLAINTIFF PATRICK HANSEN'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date:  August 22, 2008<br>Time:  9:00 a.m.<br>Dept.:  10 |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF ISSUES ................................................................................................ iv

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ...................................................................................................................... 6

    A.    Because Defendant Removed This Action From State Court, Remand-Not Dismissal-Is the Appropriate Remedy Should the Court Decline to Exercise Jurisdiction. ................................................................................................. 6

    B.    Hansen Is Entitled to Pursue This Matter in California. ..................................... 8

        1.  Hansen's Suit Is Entitled to Deference as the First-Filed Suit ........................ 8

        2.  This Court Should Not Dismiss Hansen's Action Based Upon CentiMark's Unsupported Allegations. ............................................................ 10

            a.  Hansen's suit is not an improper preemptive suit....................................... 11

            b.  Hansen did not file suit in California to secure a more favorable forum. ........................................................................................................ 12

            c.  The purpose of the declaratory judgment act is served by this Court's retention of Hansen's suit. .............................................................. 14

            d.  Judicial economy does not require deference to CentiMark's Pennsylvania suit. ...................................................................................... 15

CONCLUSION ................................................................................................................. 16

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

**TABLE OF AUTHORITIES**

Page

<u>Cases</u>

*Barapind v. Reno,* 72 F. Supp. 2d 1132 (E.D. Cal. 1999).................................................................. 9

*Bomanite Corp. v. Newlook Intern., Inc.,* , 2008 WL 1767037 (E.D. Cal.)........................................ 15

*Charter Oak Fire Ins. Co. v. Amer. Home Assurance Co.,* 2006 WL 3050863 (N.D. Cal.) ...... 6, 7

*Church of Scientology of California v. U.S.,* 611 F.2d 738 (9th Cir. 1979) ..................................... 9

*Cottman Transmission Sys., Inc. v. Melody,* 851 F.Supp. 660 (E.D. Pa. 1994)............................ 13

*Davis v. Advanced Care Techs. Inc.,* 2007 WL 2288298 (E.D. Cal.)..................................... 13, 14

*Del Suppo, Inc. v. Nautilus Ins. Co.,* 2007 WL 2345287 (W.D. Pa.) ............................................ 7

*Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir. 1992) .......................................................................... 6

*General Video Corp. v. Soule,* 2000 WL 328118 (E.D. Pa.) .......................................................... 13

*Golden Eagle Ins. Co. v. Travelers Cos.,* 103 F.3d 750 (9th Cir. 1996)........................................ 6

*Gov't Employees Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998)................................................. 6

*Grumman Systems Support Corp. v. Data Gen. Corp.,* 125 F.R.D. 160 (N.D. Cal. 1988)........... 10

*Guthy-Renker Fitness v. Icon Heath & Fitness,* 179 F.R.D. 264 (C.D. Cal. 1998)....... 9, 11, 12, 15

*Hennessey v. NCAA,* 564 F.2d 1136 (5th Cir. 1977) ..................................................................... 10

*Hyrne v. Allstate Ins. Co.,* 2006 WL 1889179 (D.S.C.) ................................................................. 7

*Inherent.com v. Martindale-Hubbell,* 420 F. Supp. 2d 1093 (N.D. Cal. 2006) ....................... 8, 11

*Intersearch Worldwide v. Intersearch Grp.,* 544 F. Supp. 2d 949 (N.D. Cal. 2008).... 9, 11, 14, 15

*Koch Engineering Co. v. Monsanto Co.,* 621 F. Supp. 1204 (E.D. Mo. 1985) ........................... 14

*McDowell Oil Serv., Inc. v. Interstate Fire & Casualty Co.,* 817 F.Supp. 538 (M.D. Pa. 1993) ... 7

*Micron Tech., Inc. v. Mosaid Tech., Inc.,* 518 F.3d 897 (Fed. Cir. 2008) .................................... 16

*Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93 (3d Cir. 2004) ....................................................... 8

*Mission Ins. Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983) ................................. 14

*Northwest Airlines, Inc. v. Amer. Airlines, Inc.,* 989 F.2d 1002 (8th Cir. 1993) ........................... 8

*Schmitt v. JD Edwards World Solutions Co.,* 2001 WL 590039 (N.D. Cal.) .......................... 7, 11

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

### TABLE OF AUTHORITIES
*(cont'd)*

**Page**

*Stemcells, Inc. v. Neuralstem, Inc.*, 2008 WL 2622831 (N.D. Cal.) ..................................... 8, 9, 16

*Ward v. Follett Corp.*, 158 F.R.D. 645 (N.D. Cal. 1994) ........................................... 11

*Warner v. Frontier Ins. Co.*, 288 F. Supp. 2d 127 (D.N.H. 2003) .................................. 7

*Weinstein v. Metlife Inc.*, 2006 WL 3201045 (N.D. Cal.)............................................ 9

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 2001 WL 897452 (6th Cir.)........ 14, 15

### <u>Statutes and Other Regulatory Authority</u>

§ 1060 of the California Code of Civil Procedure .......................................................... 1

§ 16600 of the California Business and Professions Code ............................................. 1, 9

28 U.S.C.A. § 2201 .................................................................................................. 5

F.R.C.P. Rule 13(a) ................................................................................................. 9

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

Plaintiff Patrick Hansen's Opposition to Defendant's Motion to Dismiss - C-08-2611-SI

- iii -

**STATEMENT OF ISSUES**

I.      Whether Plaintiff Patrick Hansen ("Hansen"), a life-long California resident who at all relevant times worked for Defendant CentiMark Corporation ("CentiMark" or "Defendant") in California, is entitled to challenge the validity of his non-compete agreement pursuant to § 16600 of the California Business and Professions Code in a California forum?

II.     Whether this Court may properly exercise its discretion under the federal declaratory judgment act to *dismiss* Hansen's suit which Hansen initially filed in California Superior Court and which this Court received only by virtue of the removal procedures, thereby leaving Hansen without judicial redress?

III.    Whether extraordinary circumstances exist warranting departure from the first-to-file rule?

## INTRODUCTION

From January 2003 to April 2008, Plaintiff Patrick Hansen, a life-long California resident,[1] worked for Defendant CentiMark Corporation as a national accounts manager out of CentiMark's San Leandro, California office. Hansen Decl. ¶¶ 1-3, 15. After leaving CentiMark's employment on April 21, 2008, Hansen filed this suit in California Superior Court seeking a declaration pursuant to § 1060 of the California Code of Civil Procedure that the non-compete agreement he executed while employed by CentiMark violates § 16600 of the California Business and Professions Code and is, accordingly, void and unenforceable.

Rather than respond to Hansen's suit, CentiMark filed its own suit against Hansen in Pennsylvania, a forum with which Hansen has no significant contact and certainly none related to this suit. After its motion for a temporary restraining order prohibiting Hansen from working for his new employer was denied—**twice**—by the Pennsylvania federal court, CentiMark then removed Hansen's suit to this Court. As the removing party, CentiMark bears the burden of establishing that this Court possesses subject matter jurisdiction over the dispute. However, in complete contradiction of its burden, CentiMark now asks this Court to dismiss Hansen suit pursuant to Rule 12(b)(1) (which allows a party to challenge a court's subject matter jurisdiction).

CentiMark's motion is based upon the faulty premise that the federal declaratory judgment act provides federal courts sitting in diversity with the discretion *to dismiss* (as opposed to remand) declaratory actions removed from state court. CentiMark's procedural gamesmanship is nothing more than a veiled attempt to deprive a lifelong California resident and employee of the relief to which he is entitled under California law. Accordingly, CentiMark's motion should be denied.

---

[1] Hansen lived briefly in Colorado while working for a former employer. *See* Hansen Decl. ¶ 2.

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

## **FACTUAL BACKGROUND**

Until recently, Hansen worked for CentiMark as a national accounts manager in its roofing division, serving northern California as well as a handful of other western states. Hansen Decl. ¶ 3. Hansen primarily worked out of CentiMark's San Leandro, California office. Hansen Decl. ¶ 4. Hansen also occasionally traveled to other areas within his assigned territory. Hansen Decl. ¶ 4. Hansen did not have much contact with CentiMark's corporate offices in Pennsylvania. Indeed, Hansen traveled to Pennsylvania on just two occasions: once shortly after he was hired by CentiMark in early 2003 and the second in November 2007. Hansen Decl. ¶ 20. Both visits were brief and unrelated to this litigation. *See* Hansen Decl. ¶ 21.

Hansen's immediate supervisor while employed by CentiMark was initially located in West Chicago, Illinois where CentiMark's National Accounts Management ("NAM") team is located. Hansen Decl. ¶¶ 5-6. CentiMark's Senior Vice President for its NAM team, Glenn Jones, is located in this office as are other employees who provide administrative support to the NAM team. Hansen Decl. ¶ 6. Later, Hansen reported to Randy Axelson who officed in California. Hansen Decl. ¶ 5. Hansen's administrative assistant, Doris King, was also located in California. Hansen Decl. ¶ 5.

As a term and condition of his employment with CentiMark, Hansen was required to execute an employment agreement (the "Agreement"), portions of which are now in dispute.[2] *See* Compl., Exh. A. That Agreement purported to restrict Hansen, for a one-year period following his separation from CentiMark, from working for any other roofing or flooring contractor (despite the fact that Hansen did not work in CentiMark's flooring division) which sells products or services similar to those of CentiMark and is located in any territory served by Hansen during the

---

[2] Hansen was unaware that CentiMark would require that he execute a non-compete agreement as a term and condition of his employment until *after* Hansen had accepted the position and *after* Hansen had resigned from his prior employment. Hansen Decl. ¶ 8.

1  last three years of his employment.  *See* Compl., Exh. A at ¶ 3.2.  The Agreement also purported

2  to prohibit Hansen, again for a one-year period, from soliciting any customer, prospective

3  customer, or supplier of CentiMark's with whom Hansen had contact *at any point* during his

4  employment with CentiMark.  *See* Compl., Exh. A at ¶ 3.3.  The Agreement defined "prospective

5  customer" broadly, including "any person or other business entity, contacted *by [CentiMark]*

6  during [Hansen's] employment with [CentiMark]."  *See* Compl., Exh. A at ¶ 3.3 (emphasis

7  added).  While Pennsylvania law purportedly governed the Agreement, *see* Compl., Exh. A at ¶

8  4.3, the Agreement did not contain a forum-selection clause limiting the locale of any litigation

9  stemming from the Agreement.  *See* Compl.

10      Dissatisfied with CentiMark's management, Hansen eventually began looking for new

11  employment.  Hansen Decl. ¶ 10.  In that regard, Hansen consulted a California attorney about the

12  enforceability of the Agreement in February 2008.  Hansen Decl. ¶ 11.  The attorney advised

13  Hansen that in the event he decided to leave CentiMark he should consider pursuing a declaratory

14  judgment action to challenge the validity of the Agreement's provisions which purported to

15  restrict his post-separation employment opportunities under § 16600 of the California Business

16  and Professions Code.[3]  *See* Hansen Decl. ¶ 11.  That statute invalidates "every contract by which

17  anyone is restrained from engaging in a lawful profession, trade, or business of any kind[.]"

18  Hence, Hansen began to consider legal action in order to enforce his rights as a California

19  resident and employee well before he actually filed this suit.

20      To further his job hunt, Hansen posted his resume on the internet, and an independent,

21  third-party recruiter contacted him shortly thereafter.  Hansen Decl. ¶ 12.  The recruiter arranged

22  for Hansen to interview with Tecta America Corp. ("Tecta"), a roofing company, at its corporate

[3] By disclosing these facts, Hansen does not waive his rights under the attorney-client or any other privilege.

1   offices in Illinois.[4]  Hansen Decl. ¶ 13.  Hansen was intrigued by Tecta's experience in green

2   roofing, its focus on new construction and service contracts (as opposed to sales contracts), and

3   its kinder management style.  Hansen Decl. ¶ 14.  Tecta eventually offered Hansen a position as

4   its national accounts manager for California, and Hansen accepted.  Hansen Decl. ¶ 14.  Hansen

5   agreed to start his new position with Tecta on May 12, 2008.  *See* Hansen Decl. ¶ 20.

6
7           On April 21, 2008, Hansen announced his resignation from CentiMark.  Hansen Decl. ¶

8   15.  Hansen's attorneys had been instructed to prepare a declaratory judgment and injunction

9   action under California state law prior to this date, *see* Hansen Decl. ¶ 16, and on April 22, 2008,

10  Hansen gave his attorneys the go-ahead to file suit in California Superior Court.  Hansen Decl. ¶

11  17.  While CentiMark claims that it threatened to sue Hansen on April 22, 2008 and that Hansen

12  supposedly raced to the courthouse in response, CentiMark notably provides no evidentiary

13  support for its assertion.  Indeed, CentiMark's alleged "threat" consisted of an email sent to

14  Tecta's president Mark Santacrose ("Santacrose") in which CentiMark stated that it was "currently

15  exploring all business and legal options."  Santacrose Decl., Exh. A.  Notably, Hansen was not

16  copied on this email, and regardless, Hansen's intent to sue was solidified prior to this date.

17  Hansen Decl. ¶ 17.

18
19  _____

20  [4] CentiMark briefly notes in its supporting memorandum that CentiMark and Tecta had discussed
    the possibility of a merger in 2007 and that the two had entered into an agreement not to solicit

21  each other's senior managers until March 13, 2008 in order to facilitate the exchange of
    confidential information as part of those discussions.  *See* CentiMark's Memo. of Points and

22  Authorities at 5.  CentiMark's calling out of the issue is apparently intended to suggest that Tecta
    breached its obligations under that agreement by hiring Hansen.  CentiMark goes on to falsely

23  claim that the parties exchanged confidential information during their discussions and to suggest
    that the parties' negotiations were extensive.  Once again, however, CentiMark fails to provide

24  any evidentiary support for its allegations, nor could it.  Contrary to CentiMark's unsupported
    allegations, the parties never exchanged confidential information, a basic premise of the

25  agreement, and their "negotiations" involved one 90-minute meeting in which both parties
    acknowledged that their very different business models did not make a merger of the two a

26  desirable endeavor.  Santacrose Decl. ¶¶ 2-3.  Hansen was not party to, privy to, or in anyway
    involved in these discussions and, moreover, did not constitute senior management.  Santacrose

27  Decl. ¶ 5.  Regardless, however, as the above-stated facts demonstrate, Tecta did not solicit
    Hansen, rather an independent, third-party recruiter connected Hansen with Tecta.

On April 23, 2008, Hansen's attorneys filed suit against CentiMark in California Superior Court. Hansen Decl. ¶ 18. CentiMark was served with Hansen's suit on April 24, 2008. Hansen Decl. ¶ 19. A week later, CentiMark filed suit against Hansen as well as Tecta and another former CentiMark employee in Pennsylvania, raising seven causes of action against Hansen, each of which centered on Tecta's hiring of Hansen as well as Hansen's obligations under the Agreement.[5] *See* Hansen Decl., Exh. A. CentiMark's filing completely disregarded the confines of the Pennsylvania court's jurisdiction over Hansen, and accordingly, Hansen has moved to dismiss it for want of jurisdiction. Hansen has also moved to dismiss it in accordance with the first-to-file rule.

Despite the Pennsylvania court's lack of jurisdiction over Hansen, CentiMark moved *ex parte* for a temporary restraining order ("TRO") prohibiting Hansen from working for Tecta and from contacting CentiMark's customers. W.D. Pa. Pacer, 08CV00593, docket entry no. 4 (May 2, 2008). Contrary to the representations made by CentiMark in its supporting papers, Hansen had not yet even begun working for Tecta at the time CentiMark filed its motion. *Id*. at docket entry no. 5 (May 2, 2008); Hansen Decl. ¶ 20. CentiMark's motion was promptly denied. Court Or. (May 5, 2008). CentiMark's subsequent motion to vacate the court's order denying its request for a TRO was also denied. Court Or. (May 13, 2008).

CentiMark then removed Hansen's suit to this Court where it now improperly seeks its dismissal, claiming that the federal declaratory judgment act, 28 U.S.C.A. § 2201, allows this Court to do so. CentiMark's legal position is simply wrong; should the Court exercise its discretion and decline to hear this matter, it should remand (not dismiss) the matter back to state court. Moreover, the ground on which CentiMark's motion is based—that Hansen's suit was

---

[5] CentiMark's causes of action against Hansen include: breach of the Agreement, misappropriation of trade secrets, tortious interference with contract and business relations, unfair competition, breach of fiduciary duties, and civil conspiracy. Hansen Decl., Exh. A.

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

1   improperly filed in order to beat CentiMark to the courthouse—is factually incorrect (and, indeed,

2   unsupported by any affidavit, declaration, or other form of evidence).  In short, Hansen, a

3   California resident and employee at all relevant times, is entitled to pursue this matter in

4   California.

5

6   **ARGUMENT**

A.   **Because Defendant Removed This Action From State Court, Remand—Not**
7       **Dismissal—Is the Appropriate Remedy Should the Court Decline to Exercise**
        **Jurisdiction.**
8

9       CentiMark asks this Court to dismiss Hansen's complaint seeking a declaratory judgment

10  and injunction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for want of

11  subject matter jurisdiction.  Def.'s Amended Notice of Mot. and Mot. at 2.  CentiMark's motion is

12  bizarre to say the least.  CentiMark, by removing this action to federal court, bears the burden of

13  establishing that subject matter jurisdiction is appropriate in this Court.  *See e.g. Gaus v. Miles,*

14  *Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).  In complete contradiction of its burden, CentiMark, with

15  this 12(b)(1) motion, asks this court to decline to exercise subject matter jurisdiction and dismiss

16  this matter.  CentiMark appears to want to have its cake and eat it too.

17

18      CentiMark's motion is based upon its assertion that this Court has the discretion under the

19  federal declaratory judgment act to decline to find subject matter jurisdiction and to dismiss

20  Hansen's suit.  CentiMark's argument might have merit had this matter action originally been filed

21  in federal court.  Remand to state court, however, is the appropriate remedy in a removed suit.  In

22  *Golden Eagle Ins. Co. v. Travelers Cos.*, for example, the Ninth Circuit, (against the wishes of

23  both parties) concluded that the district court should have declined to exercise its discretion under

24  the federal declaratory judgment act to entertain a declaratory judgment action removed from

25  state court.  103 F.3d 750, 756 (9th Cir. 1996), *overruled on other grounds by Gov't Employees*

26  *Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998).  The court indicated that under such

27  circumstances, the appropriate remedy was to "remand the case to the district court with

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

instructions to remand it back to the state court." *Id.* (emphasis added); *see also Charter Oak Fire Ins. Co. v. Amer. Home Assurance Co.*, 2006 WL 3050863,*7 (N.D. Cal. Oct. 25, 2006) (exercising discretion to decline to hear removed action seeking declaratory judgment and remanding it back to state court); *Warner v. Frontier Ins. Co.*, 288 F. Supp. 2d 127, 132 (D.N.H. 2003) (in declining to exercise jurisdiction over a removed case under the federal declaratory judgment act, noting that "[r]emand, rather than dismissal, is the appropriate course here"); *Del Suppo, Inc. v. Nautilus Ins. Co.,* 2007 WL 2345287, *3 (W.D. Pa. Aug. 16, 2007) (exercising discretion to decline to hear removed action seeking declaratory judgment and remanding it back to state court); *McDowell Oil Service, Inc. v. Interstate Fire & Casualty Co.*, 817 F.Supp. 538, 547 (M.D. Pa. 1993) (same); *Hyrne v. Allstate Ins. Co.,* 2006 WL 1889179, *3 (D.S.C. July 7, 2006) (same).

The caselaw to which CentiMark cites in support of its position that dismissal is appropriate are distinguishable from the facts present here. In fact, with the exception of the unreported decision of *Schmitt v. JD Edwards World Solutions Co.*, 2001 WL 590039 (N.D. Cal. May 18, 2001), none involve the dismissal of a declaratory judgment action initially filed in state court and, accordingly, are inapposite. Moreover, *Schmitt* is distinguishable on other grounds.

In *Schmitt*, the plaintiff—after being expressly advised by the defendant that it intended to file suit against him in Colorado state court the very next day—raced to California state court to file a declaratory judgment action. *Id.* at *2. Hours later, the defendant, as promised, filed suit in Colorado state court. *Id.* Both cases were then removed to federal court. While the Northern District of California ultimately dismissed the first-filed action which sought a declaratory judgment, there is no indication that the court considered whether doing so was proper in light of the manner in which it received the suit (through removal). *See id.* at **1-3. Moreover, important to the court in dismissing the action was the fact that the plaintiff had made "no allegation that the Colorado court lack[ed] personal jurisdiction over [him]." Accordingly, the

court had assurance that the Colorado action would endure and could provide the plaintiff with the relief he sought.  *Id*. at *3.

In contrast here, Hansen has moved to dismiss CentiMark's Pennsylvania suit for want of jurisdiction.  As noted above, Hansen has been to Pennsylvania on just two occasions, neither of which relate to the parties' dispute.[6]  Accordingly, the Pennsylvania court must dismiss CentiMark's suit as against Hansen.  *See, e.g., Miller Yacht Sales, Inc. v. Smith*, 384 F.3d  93, 102 (3d Cir. 2004) (noting that specific jurisdiction requires a finding that the cause of action is related to or arises out of the defendant's contacts with the forum).  If the Court here were to dismiss Hansen's suit, Hansen would then be left without judicial redress.  In short, dismissal is inappropriate.

**B.**    **Hansen Is Entitled to Pursue This Matter in California.**

Even assuming dismissal were a proper remedy, CentiMark does not provide any legitimate basis warranting a departure from the first-to-file rule nor calling for this Court to exercise its discretion under the federal declaratory judgment act to decline to hear the matter.

1.    *Hansen's Suit Is Entitled to Deference as the First-Filed Suit.*

In accordance with the first-to-file rule, a court should "give[] priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."  *Stemcells, Inc. v. Neuralstem, Inc.*, 2008 WL 2622831, *2 (N.D. Cal. July 1, 2008) (internal quotations omitted) (*quoting Northwest Airlines, Inc. v. Amer. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).  The first-to-file rule applies if the two matters involve similar parties and similar issues.  *Id.*; *see also Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).  "The rule serves the purpose of promoting efficiency [] and should not be disregarded lightly."  *Stemcells*, 2008 WL 2622931

---

[6] CentiMark does not allege that the Pennsylvania court possesses *general* personal jurisdiction over Hansen, only specific personal jurisdiction.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
NAPLES

at *2 (internal quotations omitted) (*quoting Church of Scientology of California v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)); *see also Inherent.com*, 420 F. Supp. 2d at 1097. That the first-filed action is a declaratory action is not relevant in analyzing whether the first-to-file rule should be applied. *See Stemcells,* 2008 WL 2622931 at *2.

Here, CentiMark concedes that Hansen's California suit was filed first. While CentiMark's Pennsylvania suit involves two additional parties, "the parties need not be identical" for the first-to-file rule to apply; the parties simply must not "significantly differ." *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999); *see also Weinstein v. Metlife Inc.,* 2006 WL 3201045, *4 (N.D. Cal. Nov. 6, 2006) (Illston, J.) ("The fact that there are additional defendants in one of these actions is not dispositive." (*citing Barapind*)). Here, both suits involve CentiMark and Hansen and, accordingly, the parties do not significantly differ.

In addition, although CentiMark's Pennsylvania suit involves claims in addition to breach of the Agreement, the underlying basis of each is the Agreement, including CentiMark's stated purpose for the Agreement: to protect its trade secrets. Indeed, a determination that the Agreement here does not fall within the narrow trade-secret exception to § 16600 eviscerates all of CentiMark's causes of action. Accordingly, the two matters involve sufficiently similar issues. *See, e.g., Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) (second suit's inclusion of unfair competition and intentional interference with contract claims did not cause first suit to fall outside the first-to-file rule); *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998).

To the extent CentiMark disagrees, however, there is a simple solution: CentiMark can bring its claims in this Court, where it should have brought them to begin with. There is absolutely nothing prohibiting CentiMark from doing so. Indeed, as its claims constitute compulsory counterclaims against Hansen, CentiMark *must* bring its suit here. Fed. R. Civ. Pro.

13(a).[7]

Hansen's California filing is in fact perfectly appropriate under the circumstances. Hansen currently resides in California and has resided in California at all relevant times. Hansen applied for, interviewed for, and accepted the position with CentiMark while physically located in California. Hansen Decl. ¶ 7. Hansen executed his duties for CentiMark in California and officed there in CentiMark's San Leandro office. Hansen's administrative assistant and supervisor at the time of his departure were located in California. Hansen executed the Agreement, now at the heart of this dispute, in California. Hansen Decl. ¶ 9. Finally, Hansen now works for Tecta in California. In contrast, Pennsylvania, the location of CentiMark's later-filed suit, has no connection to Hansen's (nor CentiMark's) suit. The Agreement, prepared by CentiMark, did not include a forum selection clause attempting to place jurisdiction in Pennsylvania. In light of these facts, California is not only the locale of the first-filed suit, but the most appropriate forum.

2.    *This Court Should Not Dismiss Hansen's Action Based Upon CentiMark's Unsupported Allegations.*

CentiMark makes a number of unsupported factual allegations which it claims warrant a departure from the first-to-file rule and allow this Court to exercise its discretion under the federal declaratory judgment act to dismiss Hansen's California suit. Specifically, CentiMark claims dismissal is appropriate because: (1) Hansen's suit is an improper preemptive suit; (2) Hansen's suit was the result of improper forum-shopping; (3) retaining Hansen's suit will not further the

---

[7] In its brief opposing Hansen's motion to dismiss CentiMark's Pennsylvania suit, CentiMark argues against dismissal, in part, because its civil conspiracy claim supposedly compels the court to keep the alleged conspirators together. It is well-settled, however, that it is permissible to sue but one of several alleged conspirators and that co-conspirators are not indispensable parties. *E.g.* *Hennessey v. NCAA*, 564 F.2d 1136, 1147 (5th Cir. 1977); *Grumman Systems Support Corp. v. Data Gen. Corp.*, 125 F.R.D. 160, 164 (N.D. Cal. 1988) (dismissing case as against one of three co-conspirators due to that individual's earlier filing in the District of Massachusetts (*i.e.* applying the first-to-file rule) and despite the plaintiff's argument that the three defendants, as alleged co-conspirators, needed to be tried together and that they could not be tried together in Massachusetts due to that court's lack of jurisdiction over two). Accordingly, there is no requirement that all co-conspirators be tried together.

QUARLES & BRADY LLP
ATTORNEYS AT LAW
NAPLES

1   policy supporting declaratory actions; and (4) dismissing Hansen's suit in favor of CentiMark's

2   Pennsylvania suit furthers judicial economy.  CentiMark's arguments—the factual basis for each

3   being completely unsupported—fail.

4
5         a.   <u>CentiMark disingenuously claims that Hansen's suit constitutes an improper preemptive suit.</u>

6         CentiMark falsely claims that Hansen's suit is "clearly an anticipatory declaratory

7   judgment action intended to preempt CentiMark's imminent filing of the Pennsylvania Action."

8   CentiMark's Memo. of Points and Authorities at 12.  More specifically, CentiMark alleges (again,

9   without supporting evidence) that "CentiMark advised on April 22, 2008 that it might pursue

10  litigation, and Hansen filed this action the very next day."  CentiMark's Memo. of Points and

11  Authorities at 13.  Exactly who CentiMark supposedly advised is left to the reader's imagination.

12  To constitute an improper anticipatory action warranting departure from the first-to-file rule,

13  however, CentiMark must demonstrate much more; specifically, CentiMark must show that

14  "[Hansen was] in receipt of specific, concrete indications that a suit by [CentiMark] was

15  imminent."  *Inherent.com,* 420 F. Supp. 2d at 1098 (internal quotations omitted) (*quoting Ward v.*

16  *Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994)); *see also Intersearch Worldwide*, 544 F.

17  Supp. 2d at 960; *Guthy-Renker*, 179 F.R.D. at 271.

18        In *Schmitt v. JD Edwards World Solutions, Co.*, which CentiMark cites in support of its

19  position that an exception to the first-to-file rule applies here, the court found exception to the

20  first-to-file rule based upon the employer's submission of a declaration which stated that it "had

21  notified Schmitt on March 6, 2000 that [it] planned to file suit [against him in Colorado] the next

22  day."  2001 WL 590039 at * 1.  The next day, Schmitt raced to the California courthouse with a

23  declaratory judgment action, filing just "hours" before the employer filed its suit, as promised, in

24  Colorado.  *Id.*  Based upon these facts, the court concluded that Schmitt's suit was not entitled to

deference under the first-to-file rule.[8]  *Id.* at **2-3.  Similarly, in *Inherent.com,* the court concluded that exception to the first-to-file rule applied given that the plaintiff in the first suit had filed immediately after receiving a letter from the defendant which included a "five-page exhaustive analysis of the factual history [of the dispute] … [and] stated that unless a settlement [was] reached within five (5) business days a lawsuit [would] be filed."  420 F. Supp. 2d at 1059-1100.

In contrast here, there is no evidence that Hansen was in receipt of "specific, concrete indications that a suit by [CentiMark] was imminent."  *See* discussion *supra*.  CentiMark's alleged "threat" was not even directed to Hansen but rather Tecta.  Santacrose Decl., Exh. A.  Moreover, CentiMark's communication with Tecta gave no indication that suit was imminent, rather it merely stated that CentiMark was "exploring all business and legal options."  Santacrose Decl, Exh. A.  "[A] letter which [merely] suggests the possibility of legal action[, however] …is not a specific, imminent threat of legal action."  *Intersearch*, 544 F. Supp. 2d at 960 (emphasis added; internal quotations omitted) *(quoting Guthy-Renker*, 179 F.R.D. at 271).

Moreover, as Hansen's supporting declaration demonstrates, he did not file this suit in response to any threat made by CentiMark.  Rather, his intent to pursue a declaratory judgment action against CentiMark was solidified prior to CentiMark's alleged threat, and his attorneys had in fact been instructed to prepare a declaratory judgment action prior to that date.  Hansen Decl. ¶ 11.  In sum, there is no evidence that Hansen's suit was a preemptive suit filed in bad faith.

> b.  <u>CentiMark has not demonstrated that Hansen filed suit in California to secure a more favorable forum.</u>

CentiMark next argues that exception from the first-to-file rule is additionally warranted because Hansen's California suit was filed for the purpose of securing a more favorable forum.

---

[8] *Schmitt* is additionally distinguishable from the facts present here for the reason that the employee in Schmitt had actually worked for the employer in Colorado, the location of the second-filed suit, for a number of years.  *Id.* at *1.

1   Specifically, CentiMark accuses Hansen of filing suit in California with the hopes that "a

2   California court would be more likely than a non-California court to disregard the agreed-upon

3   choice of law, apply California law, and determine that the restrictive covenants are

4   unenforceable under California law."  CentiMark's Memo. of Points and Authorities at 13.

5
        CentiMark fails to cite to any authority in support of its position that California is a more
6
    favorable forum for Hansen.  Indeed, as Hansen noted in his motion to dismiss CentiMark's
7
    Pennsylvania suit, both California and Pennsylvania courts under the present circumstances
8
    would likely apply California law to ascertain the enforceability of Hansen's non-compete
9
    agreement.  As Pennsylvania courts have noted, § 16600 of the California Business and
10
    Professions Code, which voids all non-compete agreements except to the extent necessary to
11
12  protect trade secrets, reflects a "clearly enunciated public policy of the State of California."

13  *Cottman Transmission Sys., Inc. v. Melody*, 851 F.Supp. 660, 673 (E.D. Pa. 1994); *see also*

14  *General Video Corp. v. Soule*, 2000 WL 328118, * 10 (E.D. Pa. March 27, 2000).
15
        Accordingly, Pennsylvania courts have indicated that when an employer files suit in
16
    Pennsylvania seeking enforcement of a non-compete agreement against a California employee,
17
    California law should apply.  *Cottman*, 851 F.Supp. at 673-74; *General Video Corp.*, 2000 WL
18
    328118 at * 10.  This is true even if the non-compete calls for the application of Pennsylvania
19
    law.  *Cottman*, 851 F.Supp. at 671, 673-74 (denying motion for preliminary injunctive relief on
20
21  grounds that plaintiff is not likely to succeed on the merits since California law likely applies

22  despite choice-of-law provision calling for the application of Pennsylvania law); *General Video*

23  *Corp.*, 2000 WL 328118 at * 10 ("Although the Agreements sued on provide that the laws of …

24  Pennsylvania shall govern, the Court will disregard the parties' choice of law because it would be

25  contrary to a fundamental public policy of the State of California, which has a materially greater
26
    interest than Pennsylvania in the determination of the issue of whether the defendants may be
27

1    employed by a California-based company.").

2        Similarly, California courts would likely ignore a choice-of-law provision and apply

3    California state law with respect to a dispute involving a California employee and the

4    enforcement of a non-compete agreement. *See Davis v. Advanced Care Techs. Inc.,* 2007 WL

5    2288298, ** 6-8 (E.D. Cal. Aug. 8, 2007).  In *Davis*, for example, the court concluded that §

6    16600 applied to the parties' dispute despite a choice-of-law clause calling for the application of

7    Connecticut law.  *Id.* at * 6.  In reaching its decision, the court noted that the employee, like here,

8    had resided in and worked in California at all relevant times and further noted that California had

9    a "strong interest in protecting its employees from anti-competitive conduct by out of state

10   employers." *Id.* at *7.  This is exactly the situation the Court is faced with here and, accordingly,

11   California law would likely apply to invalidate the agreement.

12       In sum, both California and Pennsylvania courts would apply California law to this

13   dispute and accordingly, CentiMark's allegations of forum-shopping ring hollow.

14
15             c.       The purpose of the declaratory judgment act is served by this Court's
                        retention of Hansen's suit.

16       Similarly, there is no merit to CentiMark's argument that the purposes of the declaratory

17   judgment act are not served by this Court's retention of Hansen's suit.  A declaratory judgment

18   action is "an appropriate vehicle to alleviate the necessity of waiting indefinitely" for the other

19   party to sue. *See Intersearch*, 544 F. Supp. 2d at 961.  As the caselaw to which even CentiMark

20   cites notes, "[t]he [declaratory judgment act] was intended to provide a remedy which would

21   minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one

22   threatened with liability an early adjudication without waiting until his adversary should see fit to

23   begin an action after the damage has accrued." *Koch Engineering Co. v. Monsanto Co.*, 621 F.

1  Supp. 1204, 1206 (E.D. Mo. 1985).[9]  The policy supporting declaratory actions, however, may

2  not be furthered when: (1) the party seeking a declaration of their rights "has not identified any

3  loss that can be avoided through the use of the declaration[;]" (2) the underlying breach of

4  contract has already occurred; and (3) the parties have spent two years engaging in settlement

5  discussions (and, accordingly, early resolution is no longer an option).  *Id.* at 1207.

6

7      This, however, is not the case here.  A declaratory judgment here would have an

8  immediate impact on Hansen's ability to serve Tecta.  Moreover, Hansen's alleged breach of the

9  Agreement is an on-going concern to CentiMark (hence, its request for an injunction in the

10  Pennsylvania action).  Finally, the possibility of early resolution is still present here.  In sum,

11  Hansen's suit furthers the underlying policy supporting declaratory actions.

12          d.      Judicial economy does not require deference to CentiMark's Pennsylvania
13                  suit.

14      Finally, the facts present here do not warrant a departure from the Ninth Circuit's "strong

15  presumption [] in favor of the plaintiff's chosen forum."  *Bomanite Corp. v. Newlook Intern., Inc.*,

16  2008 WL 1767037, * 11 (E.D. Cal. Apr. 16, 2008).  While CentiMark alleges that the

17  Pennsylvania suit is more comprehensive, encompassing more claims and more parties, it

18  provides no analysis of other factors relevant to the Court's analysis of whether the "strong

19  presumption" in favor of the plaintiff's chosen forum has been overcome, such as: the location of

20

21  ───────────────

22  [9] The two other cases to which CentiMark cites in support of its position that Hansen's suit does
    not serve the purpose of the declaratory judgment act are readily distinguishable from the facts at
23  hand.  In both *Mission Ins. Co. v. Puritan Fashions Corp.* and *Zide Sport Shop of Ohio, Inc. v. Ed
    Tobergte Assoc., Inc.*, the courts' dismissals of the underlying declaratory judgment actions
24  depended upon the courts' respective findings that the actions were filed in bad faith.  *See Mission
    Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (finding bad faith based
25  upon statements made by plaintiff suggesting that the defendant should wait before filing suit
    while the plaintiff continued to process the defendant's claim only to have the plaintiff then race
26  to the courthouse first); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 2001 WL
    897452, * 4 (6th Cir.) (affirming dismissal of declaratory judgment action because the plaintiff
27  had engaged in "bad faith" by "going along with written correspondence regarding settlement
    while, in fact, the plaintiffs had already filed but not served an anticipatory federal action").
    There is no such allegation, much less any evidence, here.  *See* discussion *supra*.

QUARLES & BRADY
LLP
ATTORNEYS AT LAW
NAPLES

the witnesses and evidence; the connection between the matter and Pennsylvania as opposed to

California; whether CentiMark would be prejudiced by litigating the matter in California; and

whether it would be inconvenient for CentiMark to litigate the matter in California.  *See, e.g.,*

*Intersearch*, 544 F. Supp. 2d at 962-63; *Guthy-Renker*, 179 F.R.D. at 272.

Here, an analysis of these factors weighs heavily in favor of deferring to Hansen's chosen

forum.  Hansen performed his duties for CentiMark in California.  Hansen, as well as his

supervisor and administrative assistant while with CentiMark, are located in California.  Hansen

performs his duties for Tecta, in alleged breach of the Agreement, in California.  In contrast,

Pennsylvania's only connection with this matter is that CentiMark's corporate offices are located

there.  Moreover, CentiMark does not alleged that it would be prejudiced by litigating this matter

in California nor does it allege that it would be inconvenient for it to litigate these matters in

California.  Indeed, CentiMark has an office in California.

Finally, that CentiMark's Pennsylvania suit identifies more claims than Hansen's suit here

is ultimately irrelevant.  Indeed, courts should be wary of "artificially broader" suits filed "to

avoid declaratory judgment jurisdiction."  *See Stemcells*, 2008 WL 2622831 at * 4 (*citing Micron*

*Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 903 (Fed. Cir. 2008) (giving little consideration to

fact that second suit was "broader" than first since this was a factor that could be "easily

manipulated.")).  Here, CentiMark's Pennsylvania suit suggests that it was filed with just that

purpose, raising seven causes of action against Hansen, including: breach of the Agreement,

misappropriation of trade secrets, tortious interference with contract and business relations, unfair

competition, breach of fiduciary duties, and civil conspiracy.  Each of these claims, however,

center on the validity and enforceability of the Agreement which Hansen seeks to have declared

invalid here.  Accordingly, there is no basis for overcoming the strong presumption in favor of

1    Hansen's chosen forum.[10]

2

3                           **CONCLUSION**

4        For all of these reasons, CentiMark's motion should be denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[10] Finally, it is worth noting that CentiMark's alternative request, that this Court transfer this matter to Pennsylvania, is entirely inconsistent with its position that this court should exercise its discretion to decline to hear Hansen's suit altogether.

1    Dated: August 1, 2008                                  s/ Otto W. Immel_____
                                                            Otto W. Immel
2                                                           *Admitted Pro Hac Vice*
                                                            QUARLES & BRADY LLP
3                                                           1395 Panther Lane, Suite 300
                                                            Naples, FL  34109
4                                                           Phone:  (239) 659-5041
                                                            Fax:  (239) 213-5449
5                                                           oimmel@quarles.com
                                                            *Attorney for Plaintiff Patrick Hansen*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27